**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION**

```
UNITED STATES OF AMERICA,      )
                               )
Plaintiff,                     )
                               )
   v.                          )   NO. 2:07-CR-197
                               )
MATTHEW MANN,                  )
                               )
Defendant.                     )
```

**OPINION AND ORDER**

This matter is before the Court on the Motion to Suppress Evidence filed by the Defendant, Matthew Mann, on February 13, 2008. For the reasons set forth below, the motion is **GRANTED IN PART and DENIED IN PART**. The motion is **GRANTED** only to the extent it seeks an order suppressing one box of various papers, wire jacks and adapter cords. The motion is **DENIED** in all other respects.

BACKGROUND

The Defendant, Matthew Mann ("Mann") was indicted on December 20, 2007, on one count of possessing child pornography. The charge arose from a search of the Defendants' computers and computer files pursuant to a warrant. In this motion, Defendant argues that the magistrate judge issuing the warrant lacked probable cause, and

1

that the search exceeded the scope of the warrant. After the Government filed a response to the motion to suppress evidence, the court held an evidentiary hearing on this matter on February 29, 2008, at which both the Defendant and the Government had a full opportunity to present evidence. At the conclusion of the hearing, the Court took the motion under advisement. In making the following findings of fact, the Court considered the credibility of the witnesses.

FINDING OF FACT

On May 26, 2007, an eighteen year old woman changing her clothes in the girl's dressing room at Jefferson High School ("Jefferson") in Lafayette, Indiana, found a video camera in a partially opened locker. The video camera was recording and pointing towards the locker room. The woman shut off the camera and took it with her. Later, she and two others reviewed the video tape, which contained a recording of a person they recognized as Mann placing the camera in the locker and concealing it. The woman then contacted the Lafayette Police Department.

Mann worked for the Red Cross as a swim instructor. He conducted pool instruction at Jefferson and another school. Mann had access to the girl's locker room at Jefferson. Prior to the incident on May 26, 2007, he had taught approximately seven sessions at the pool.

2

Detective Herbert Robinson ("Robinson") conducted an investigation of the incident. He reviewed the initial police reports and the video tape and conducted additional investigation. In the early afternoon of May 29, 2007, Detective Robinson provided sworn testimony at a probable cause hearing to obtain a search warrant.  Magistrate Norris Wang listened to the testimony and then signed the warrant.

Robinson testified to the following at the probable cause hearing.  Mann taught life guard classes for the Red Cross and provided swim instruction at Jefferson and another location.  He had access to the girls locker room while students were in the pool.  During a pool session on May 26, 2007, a female student found a video camera inside a locker.  The student took the camera and reviewed it later in the day with two other female students. The video tape revealed an eighteen year old woman and another adult female undressing.  The video tape also included footage of Mann placing and concealing the video camera in the locker room. The three women identified Mann based on clothing and body physique.

Robinson learned from Mann's employer (whose name was not revealed during the probable cause hearing) that Mann had taught seven previous sessions during 2007 with different students in each session.  The captured video tape, however, only contained video from May 26, 2007.  Robinson also learned from Mann's employer that

3

Mann did not have an office or any other location to maintain a computer, video camera or other equipment, but Mann communicated through email and Mann "talked about having a computer of his own." Based on his training or experience, Robinson stated that people involved with voyeurism were known to download images to certain web sites or keep images for "their own private collection."

At the conclusion of the probable cause hearing, Magistrate Wang issued a search warrant for Mann's residence and authorized officers to search for "video tapes, cd's or other digital media, computers, and the contents of said computers, tapes or other electronic media to search for images of women in locker rooms or other private areas."  Lafayette police officers executed the search on the same day and officers seized computers and external hard drives which store digital information, a camcorder, video cassettes, a mini-cassette, several VHS video tapes, CD's, floppy disks, a Western Digital hardrive back-up unit, a jump drive, a digital camera, a box of papers, one set of wire jacks, and two adapter cords.

After the search, Robinson interviewed Mann who provided a recorded statement confessing that he set up a video camera in the girl's locker room and had done so five or six previous times.

Detective Paul Huff conducted an examination of the computer and hard drives.  Before the exam, Huff reviewed the search warrant and determined that he was entitled to examine any digital file

4

located on the computer hard drives or storage devices because the targeted images could be found anywhere. Huff did not limit his search to a type of computer file as he knew it was possible to change a file name for purposes of disguising a certain type of file. Huff did not limit his search based on whether a file was uploaded or downloaded because often voyeurs trade videos and its not necessarily possible to tell whether a file has been downloaded.  Huff was not aware that the voyeurism case was set for a guilty plea before his investigation was complete.  However, he testified that, irregardless of a plea, he "would continue [his] investigation until it was complete."  He stated several reasons for this, including possible sentencing ramifications, and protection of the victims by ensuring any videos uploaded to the internet are removed.

    Huff conducted the examination using software commonly used by many forensic computer examiners called Forensic Tool Kit ("FTK"). The software, among other things, searches the computer and labels certain files KFF alert and KFF ignorable.  KFF stands for known file folder and is a library of files.  Huff often never looks at the KFF ignorable files because there is very little chance that they would have anything to do with the voyeurism case.  KFF alert files, on the other hand, usually contain child pornography and are part of a database of previously identified files.  When Huff found

5

KFF alert files, he looked at it without obtaining a separate search warrant.

Huff first examined the Dell Dimension 3000 computer. There he could see that a person visited a website called "perverts are us" and read and possibly downloaded some documents pertaining to fantasy child molesting. Huff visited this website to confirm that the documents had actually come from there. Huff testified that, while searching the Dell Dimension 3000 computer, he was looking for "videos or the girls in the locker room or information that would link the defendant, this computer, to the case of the voyeurism case." Huff did not find information related to the voyeurism case on this device.

Huff next examined a Dell laptop with a western digital 40 gigabyte hard drive. There he found some images of child pornography and still images taken in the Jefferson girls locker room. Huff also examined a western digital USB device that had been connected to the Dell laptop. On that, he found voyeur videos.

Third, Huff examined a 160 gigabyte western digital external hard drive. There he found many images of child porn and two videos from the Jefferson locker room.

Next, Huff examined a 20 gigabyte hard drive and a 64 gigabyte Hitachi hard drive. He did not find very much on the 20 gigabyte

drive, but he found child pornography and an encrypted word document on the Hitachi hard drive.

At the hearing on the motion to suppress, Assistant United States Attorney Gary Bell asked Huff the following question: "Now, Detective Huff, during the examination of items one through four here [referring to the devices outlined above] were you always looking for the information described in the search warrant or did there ever come a time in which you abandoned that search and began looking for child pornography?" Huff answered by stating, "No. It was almost in conjunction. I continued to look for the items with voyeurism, and as I came across the child pornography, then I would not ignore it obviously."

Huff further testified that it was "obvious" to him that the photos he discovered were child pornography. Although his report used the phrase "suspected child porn", Huff stated "I like to use the word suspected, but I'm sure if you look at these images, there would be no question in your mind." The word "suspected" was used only because of the possibility that he could be wrong.

CONCLUSIONS OF LAW

The Magistrate had probable cause to issue the warrant

In determining whether probable cause exists to issue a warrant, "the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set

7

forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983).  "Probable Cause requires only a probability or substantial chance that evidence [of criminal activity] may be found.  *United States v. Sidwell*, 440 F.3d 865, 869 (7th Cir. 2006).  This Court, in reviewing the majistrates decision to issue a warrant, may look only to the warrant itself and its supporting affidavit [or, in this case, the transcript of the probable cause hearing] for purposes of determining whether the probable cause and particularity requirements of the Fourth Amendment have been satisfied.  *United States v. Koerth*, 312 F.3d 862, 866 (7th Cir. 2002).

   Here, probable cause existed to issue the warrant to search for videotapes, cd's or other digital media, computers, and the contents of said computer, tapes, or other electronic media, to search for images of women in locker rooms or other private areas at Mann's home.   That is, based on the totality of the circumstances, there was sufficient evidence to induce a reasonably prudent person to believe that a search would uncover evidence of a crime.  The transcript supports a finding that Mann had committed a crime, specifically, voyeurism, and that Mann's residence probably contained evidence of the crime.

8

Robinson testified that three women taking a Red Cross Swimming Safety class at Jefferson contacted the Lafayette Police Department. One of these women advised that when she was changing clothes in the women's locker room, she observed an open locker, investigated, and found a video camera. There were images on the video camera of young ladies undressing in the locker room on May 26, 2007. In addition, a portion of the video tape reveals the body and clothing of a male who was setting up and concealing the video camera. The three women who contacted the police department identified this person as Mann based on his physique and based on the clothes he was wearing that day. These three women also indicated that Mann had access to the women's locker room.

Robinson testified that he learned from Mann's employer that Mann had previously taught approximately seven sessions at Jefferson with different students at each session, that he did not have an office or any other place to maintain a video camera, computer, or other equipment, and that Mann had communicated by email with the Red Cross and talked about having a computer of his own.

Robinson also testified that from his training or experience he was familiar that voyeurs, such as the defendant, will download voyeurism images to a computer for either their own personal collection or dissemination through the internet.

9

Based on all of these facts and circumstances, this Court finds that it is probable that Mann had further images of young ladies changing clothes in the locker room from previous class sessions and that any such videos would likely be found in Mann's computer files.

The Defendant argues that because no evidence was presented to identify the anonymous Red Cross worker and because no evidence was presented to establish this anonymous person's reliability or to establish that they had ever had any contact with Mann whatsoever, the information cannot be relied upon to establish probable cause. "[W]hen an average citizen tenders information to the police the police should be permitted to assume that they are dealing with a credible person, in the absence of special circumstances suggesting that such might not be the case." *United States v. Fooladi*, 703 F.2d 180, 183 (5th Cir. 1983).  Accordingly, this Court finds that the magistrate had probable cause to issue the warrant.

<u>Even if the warrant had been issued without probable cause, the good faith exception applies</u>

In *United States v. Leon*, the Supreme Court considered "whether the Fourth Amendment exclusionary rule should be modified so as not to bar the use in the prosecution's case in chief of evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found not to be supported by probable cause." *United*

10

*States v. Leon*, 468 U.S. 897, 900 (1984).  The Court concluded that "[i]n the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." *Id*. at 926.

Here, the officers conducting the search acted in reasonable reliance on a search warrant issued by a neutral and detached magistrate.  There is no evidence that the magistrate abandoned his detached and neutral role, that the officers were dishonest or reckless in preparing their affidavits or otherwise acted in bad faith, or that the warrant was so lacking in probable cause as to render the officer's belief in its existence entirely unreasonable.  Moreover, "[a]n officer's decision to obtain a warrant is *prima facie* evidence that she was acting in good faith." *See United States v. Mykytiuk*, 402 F.3d 773, 777 (7th Cir. 2005).  Accordingly, the Court finds that Defendant's challenge to the probable cause supporting the warrant must fail.

<u>The search was executed within the scope of its authorization, with limited exceptions</u>

"When an official search is properly authorized – whether by consent or by the issuance of a valid warrant – the scope of the search is limited by the terms of its authorization." *Walter v. United States*, 447 U.S. 649, 657 (1980).  The search warrant

11

provided authority to search and seize "videotapes, cd's or other digital media, computers, and the contents of said computers, tapes or other electronic media to search for images of women in locker rooms or private areas."  The warrant did not, by its terms, restrict the police officers from viewing files that might have been downloaded to Mann's computer. The warrant did not restrict the officers from deencrypting files or viewing files that had been erased.  The warrant did not restrict the police officers from viewing files related to Mann's internet activities, newsgroup participation, computer files, e-mail, papers and business records, jacks, adaptor cords.

Despite the broad language of the warrants, Mann argues that upon suspecting child pornography, the police officers were required to obtain a separate warrant.  A police officer may properly seize evidence of a crime without a warrant if: (1) a law-enforcement officer is lawfully present, (2) an item not named in the warrant (or, likewise, outside the scope of consent) is in the plain view of the officer, and (3) the incriminating nature of the item is immediately apparent (i.e., the government can show probable cause to believe the item is linked to criminal activity). *United States v. Raney*, 342 F.3d 551, 558-59 (7th Cir. 2003)(citing *United States v. Bruce*, 109 F.3d 323, 328-29 (7th Cir. 1997)).

In *United States v. Wong*, the Ninth Circuit applied the plain view doctrine in determining whether child pornography found in the

course of a valid computer search for evidence of a murder should be suppressed. *United States v. Wong*, 334 F.3d 831 (9th Cir. 2002). In *Wong*, when the agent found child pornography, it was noted and the agent continued with the search for evidence of the murder. *Id.* at 835. In applying the plain view doctrine to determine whether the evidence of child pornography should be suppressed, the Ninth Circuit Court of Appeals held that "[t]he incriminating nature of the file was immediately apparent to Van Alst. Since the police were lawfully searching for evidence of murder in the graphics files, that they had legitimately accessed and where the incriminating child pornography was located, the evidence was properly admitted under the plain view doctrine." *Id.* at 838.

Similarly, in *United States v. Gray* the United States District Court for the Eastern District of Virginia was faced with the question of whether evidence of child pornography discovered during a search of computer files authorized by an unrelated warrant must be suppressed as beyond the scope of the warrant. *United States v. Grey*, 78 F. Supp. 2d 524 (E.D. Va. 1999). In *Gray*, the officers discovered some initial images of child pornography while searching for evidence of another crime, and then obtained a second warrant authorizing a search of the computer files for child pornography. *Id.* at 528. The images of child pornography found prior to the issuance of the second warrant were not suppressed. In reaching

13

this conclusion, the Court relied on the agents testimony that he opened the subdirectory containing child pornography "not because he believed it contained child pornography, but rather because it was the next subdirectory listed and he was opening all of the subdirectories as part of his routine search for the items listed in the warrant." *Id.* at 527.  The Court noted that the agent "was entitled to examine all of defendant's files to determine whether they contained items that fell within the scope of the warrant." and that "[i]n the course of doing so, he inadvertently discovered evidence of child pornography, which was clearly incriminating on its face.  As [the agent] was lawfully searching the "Teen" and "Tiny Teen" subdirectories pursuant to the first warrant when he saw the illegal pornography, viewing that evidence did not constitute an unreasonable search under the Fourth Amendment." *Id.* at 529.

In contrast to *Wong* and *Gray*, in *United States v. Carey,* where officers searching a suspect's computer for evidence of drugs found child pornography, all but the first image of child pornography was suppressed.  The facts of *Carey* are, however, quite different from those of *Gray* and *Wong*.  *See United States v. Carey*, 172 F.3d 1268 (10th Cir. 1999).  In *Carey* the Court found that the agent abandoned his search for evidence of the drug crime in favor of a new search for evidence of child pornography.  The United States

14

Court of Appeals for the Tenth Circuit stated the following in *Carey*:

> In his own words, however, his suspicions changed immediately upon opening the first JPG file. After viewing the contents of the first file, he then had "probable cause" to believe the remaining JPG files contained similar erotic material. Thus, because of the officer's own admission, it is plainly evident each time he opened a subsequent JPG file, he expected to find child pornography and not material related to drugs." Armed with this knowledge, he still continued to open every JPG file to confirm his expectations. Under these circumstances, we cannot say the contents of each of those files were inadvertently discovered. Moreover, Detective Lewis made clear as he opened each of the JPG files he was not looking for evidence of drug trafficking. He had temporarily abandoned that search to look for more child pornography, and only 'went back' to searching for drug-related documents after conducting a five hour search of the child pornography files.
>
> We infer from his testimony Detective Lewis knew he was expanding the scope of his search when he sought to open the JPG files. Moreover, at that point, he was in the same position as the officers had been when they first wanted to search the contents of the computers for drug related evidence. They were aware they had to obtain a search warrant and did so. These circumstances suggest Detective Lewis knew clearly he was acting without judicial authority when he abandoned his search for evidence of drug dealing.

*Id.* at 1273.

In the instant case, Huff noted that the items delineated in the search warrant could be located in any type of file on the computer or storage devices. Therefore, Huff felt he had to open

every (or nearly every) file to determine its contents. While searching the files for evidence of women in locker rooms, as allowed, Huff inadvertently discovered child pornography. The incriminating nature of the images was immediately apparent. He was lawfully searching for evidence of voyeurism at the time, and he had legitimately accessed the files containing the child pornography. Accordingly, Huff did not abandon his search for images of voyeurism, and the images of chid pornography were properly seized under the plain view doctrine.

Although the images of child pornography were properly seized under the plain view doctrine, the seizure of one box of various papers and seizure of wire jacks and adapter cords were outside the specific authorization of the search warrant.

CONCLUSIONS

For the reasons set forth above, the Motion to Suppress is **GRANTED IN PART and DENIED IN PART**. The motion is **GRANTED** only to the extent it seeks an order suppressing one box of various papers and wire jacks and adapter cords. The motion is **DENIED** in all other respects.

**DATED: April 8, 2008**                    /s/ RUDY LOZANO, Judge
                                            **United States District Court**